to the amount of land sold. This the plaintiff may object to, as it lessens his security. The promissory notes of small denominations, printed on bank paper, and containing a promise to pay, with interest, a certain sum, and receivable for tolls and water rents, signed by the president and secretary of the company, being evidently intended for circulation, are clearly within the act of Indiana of the 20th January, 1841.

Upon the whole, I think the complainant is entitled to the prayer of his bill, to enjoin the corporation from issuing notes of the denomination above stated, and from receiving such notes already issued in payment of tolls, water rents, or other dues; also from selling any of the real estate now held by the corporation for its stock. And after the canal from Cambridge to the Ohio river shall have been in operation from this time, three months, the receipts having been faithfully applied to the completion of the necessary repairs, the company is required to set apart one-fourth of the receipts for the payment of the plaintiff's demand; and that the same shall be paid to the plaintiff, or deposited in the Lafayette Bank of Cincinnati, subject to the order of the court. And it is further ordered, that the corporation shall, by its proper officer or officers, make a report to the next circuit court of the United States, to be held in the state of Indiana, stating the receipts and expenditures of the company from the time this injunction is allowed up to that term, and that another report of the same character be made at the succeeding term of said court, if the plaintiff's demand shall not be discharged before that time. A receiver will now be appointed. And I take occasion here to remark, that I have no doubt the company has acted, under the exigencies in which it was placed, with a sincere desire to advance the general interests of the association and the public.

[The case was ultimately taken to the supreme court, where the final decree of this court was affirmed. 21 How. (62 U. S.) 414.]

VALLEY BANK (MERCHANTS' NAT. BANK v.). See Case No. 9,447.

## Case No. 16,821.
### VALLEY NAT. BANK v. MYERS.
[Case reported under above title in 17 N. B. R. 257, is the same as Case No. 5,549.]

VALLEY NAT. BANK v. PAPIN. See Case No. 12,239.

## Case No. 16,822.
### VALLIERE et al. v. UNITED STATES.
[Hempst. 335.][1]
District Court, D. Arkansas. June 22, 1847.
#### SPANISH LAND GRANT.

The heirs [Francois Vallieré and others] of Don Joseph Vallieré, formerly captain in the 6th regiment of the Spanish army serving in Louisiana, claimed title to a large tract of land situated partly in the state of Arkansas and partly in Missouri, on the following facts and documents:

1. The register of the land-office at New Orleans certifies that among the Spanish records under his custody, and forming part of the archives of his office, is a book bearing this title: No. 4, subdivided into volumes or sections, under the title of a "Register de lós Primeros Decretos de concession de tierra;" which book exhibits at volume 6, page 31, an entry in Spanish, of which the following is a translation: "11th June, 1793. To Captain Don Joseph Vallieré, in the district of Arkansas, a tract of land situated on the White river, extending from the rivers Norte Grande and Cibolos to the source of the said White river, ten leagues in depth."

2. The surveyor-general of Louisiana certifies that amongst the records of the surveyor-general's office under his charge, in bundle N, No. 37, he finds a plat of survey and procès verbal, in the Spanish language, of which the following is a translation: "Don Carlos Trudeau, Royal and Private Surveyor of the Province of Louisiana. I certify having measured in favor and in presence of Don Joseph Vallieré, captain of the stationary regiment of Louisiana, a portion of land situated in the jurisdiction of Arkansas, on the north and south banks of Rio Blanco, Rio Cibolos, on the west or superior limit, by the fountainhead or origin of the most western branch of the said Rio Blanco, and by vacant lands of his majesty, separated from said vacant lands by a line beginning at the same fountainhead of the north-western branch of Rio Blanco, running south-west ten leagues in depth, on the north by lands of his majesty, separated from these by a drawn line beginning at the Rio Norte Grande, commencing at a point distant ten leagues in a direct line from its mouth or confluence with the said Rio Blanco, running in a course nearly west until it meets the fountainhead or origin of the most western branch of the Rio Blanco, and on the south side by vacant lands of his majesty, separated from these by a line drawn apart, beginning at a point where ends the south-west limit, ten leagues from the fountainhead or origin of the most western branch of the Rio Blanco, running on a parallel line with the said Rio Blanco, descending ten leagues in depth, until it meets Rio Cibolos, at the distance of ten leagues in a direct line from Rio Blanco. All of which is fully demonstrated in the figurative plan which precedes, in which is marked the dimensions, courses, limits, trees, and posts, serving as artificial or natural boundaries. The line and limits have been made at the request of the grantee, and in compliance with the order from the governor-general, El Baron de Carondelet. 18th June, 1793. I certify to all which precedes, in order that it may be verified. I deliver the present with

¹ [Reported by Samuel H. Hempstead, Esq.]